UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FENG LIN,
    *on behalf of himself and others similarly situated*,

                                  Plaintiff,

              -against-
                                                      **REPORT AND RECOMMENDATION**
                                                      17-CV-3043-DLI-SJB

QUALITY WOODS, INC.,
    *doing business as Quality Woods*,
D C CABINET FACTORY INC,
    *doing business as Quality Woods*,
METROPOLITAN CABINET FACTORY, INC.,
    *doing business as Quality Woods*,
AOTIN TRADING INC.,
    *doing business as Quality Woods*,
CHAMPION CABINET, INC.,
    *doing business as Quality Woods*,
WEI GAO,
WEI ZHAN CHEN
    *also known as Dean Chen*,
DING CHEN,
JAMES WANG,

                                  Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

       Feng Lin ("Plaintiff") commenced this action on May 19, 2017 against nine defendants: Quality Woods, Inc. ("Quality Woods"), D C Cabinet Factory Inc. ("D C Cabinet"), Metropolitan Cabinet Factory, Inc. ("Metropolitan Cabinet"), Aotin Trading Inc. ("Aotin Trading"), and Champion Cabinet, Inc. ("Champion Cabinet"), collectively "Corporate Defendants," and Wei Gao ("Gao"), Wei Zhan Chen ("Wei Chen"), Ding Chen ("Ding Chen"), and James Wang ("Wang"), collectively "Individual Defendants," for violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the

Internal Revenue Code,[1] and the New York General Business Law ("NYGBL"). (Compl., Dkt. No. 1). According to the Complaint, each of the Corporate Defendants are doing business as Quality Woods and has its principal address at 1340 Metropolitan Avenue, Brooklyn, NY 11237. (*Id.* ¶¶ 9, 12, 15, 18, 21). Each of the Individual Defendants is an "officer[], director[], manager[], and/or majority shareholder[] or owner[]" of the Corporate Defendants. (*Id.* ¶ 25).[2]

No Defendant, Corporate or Individual, appeared and the Clerk of Court entered a default against all Defendants on June 5, 2018. (Clerk's Entry of Default, Dkt. No. 35). Plaintiff then filed a motion for default judgment against all Defendants on June 21, 2018. (Mot. for Default J., Dkt. No. 36). On June 22, 2018, the motion for default judgment was referred by the Honorable Dora L. Irizarry to the undersigned for report and recommendation. Plaintiff is represented by John Troy of Troy Law, PLLC ("Troy Law").

---

[1] Plaintiff's Internal Revenue Code claim was brought under 28 U.S.C. § 7434, which creates a private cause of action for the willful filing of fraudulent tax returns in certain circumstances. *See* 28 U.S.C. § 7434(a).

[2] There are significant substantive discrepancies in the Complaint. For example, although this is a FLSA and NYLL action, none of Plaintiff's filings identify the type of business Corporate Defendants are engaged in; they appear to be involved in the furniture or cabinet-making industry. This information is vital. The nature of Defendants' business can determine whether FLSA applies to them, and if so, the wage rate to which a plaintiff is entitled. The Complaint identifies Plaintiff as a carpenter employed by Corporate Defendants, (Compl. ¶ 8), but includes allegations pertaining to a restaurant business, (*see, e.g.*, *id* ¶ 45 ("[W]hen a customer left the *restaurant* without paying Defendants would use *servers'* tips from previous customers to cover the bill.") (emphasis added); ¶ 46 ("Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming *tip credit* towards Plaintiffs' and similarly situated employees' minimum wage.") (emphasis added)). Because of these deficiencies, even if the Court had concluded that service was proper in this case, it would have no basis to calculate the damages sought or enter a default judgment.

On August 24, 2018, the Court directed Troy to supplement his motion with cost receipts and proof that the motion had been served on Defendants consistent with Local Rule 55.2(c). (Order dated Aug. 24, 2018). Troy submitted a letter on August 28, 2018 with an attorney invoice and an affirmation of service indicating the default judgment papers were mailed to each Defendant. (Letter dated Aug. 28, 2018, Dkt. No. 39 ("Troy Aug. Letter")). Because the Court has serious questions about whether the Complaint and the motion for default judgment were served properly, and ultimately concludes they were not, the Court respectfully recommends the motion be denied without prejudice.

PROCEDURAL HISTORY

I.      Service of Complaint

Since this action began, Troy has filed three separate sets of affidavits pertaining to service of the Summons and Complaint. On June 8, 2017, Troy filed affidavits indicating that on May 26, 2017 at 3:30 PM, each Defendant was served with the Complaint at 1340 Metropolitan Avenue, Brooklyn, New York 11237 by delivery to a manager, Tong "Doe." (Summonses Returned Executed, Dkt. Nos. 7-15 ("Set 1 Affidavits")). The affidavits for each Individual Defendant also indicate the Complaint was mailed to them at the same address on May 30, 2017. (Summonses Returned Executed, Dkt. Nos. 12-15). On August 16, 2017, Troy filed a second set of affidavits, indicating that on August 15, 2017 at 11:25 AM, the Defendants were each served at 1340 Metropolitan Avenue, Brooklyn, New York 11237. (Summonses Returned Executed, Dkt. Nos. 16-24 ("Set 2 Affidavits")). This is the same address as Set 1; however, Set 2 avers that the Complaint was served on a different manager, Alsie "Doe." (*Id.*). Affidavits for each Individual Defendant again indicate the Complaint was mailed to the

3

same address on August 16, 2017. (Summonses Returned Executed, Dkt. Nos. 21-24). The Set 1 and Set 2 Affidavits were filed on ECF. Troy did not provide a letter or explanation why Defendants were served a second time at the same address, or otherwise explain the existence of two sets of service affidavits.

Several months later, after no activity had occurred in the case, the Court set a deadline for Plaintiff to seek certificates of default from the Clerk of Court and file any motion for default judgment. (Order dated May 10, 2018). Troy then filed a third set of affidavits of service. (Summonses Returned Executed, Dkt. Nos. 25-33 ("Set 3 Affidavits") dated May 31, 2018). Each of these affidavits is titled "Amended Affidavit of Service" and indicates that, when the Defendants were served by delivery to Alsie Doe on August 15, 2017 at 11:25 AM, they were served at a different address: 40 East Merrick Road, Freeport, New York, 11520. (*Id.*). Each affidavit for an Individual Defendant again indicates the Complaint was mailed to that address on August 16, 2017. (Summonses Returned Executed, Dkt. No. 21-24).

The Set 3 Affidavits were notarized on May 31, 2018, more than *nine months* after the service purportedly took place. (Set 3 Affidavits). Other than a very brief statement that Defendants were "properly served" on August 15, 2017 (Req. for Certificate of Default, Dkt. No. 34), and a cursory summary of the dates the sets of service were filed, (Decl. in Support of Mot. for Default J., Dkt. No. 37 ("Troy Decl.") ¶¶ 6-7), Troy did not provide any explanation why three sets of affidavits were necessary. Nor did Troy indicate that he was withdrawing any of the affidavits or how the three sets of affidavits related to each other.

The Clerk of Court entered default against each Defendant on June 5, 2018. (Clerk's Entry of Default, Dkt. No. 35).

4

II.     Service of Motion for Default Judgment

When Troy filed his motion for default judgment on June 21, 2018, he did not submit proof of service of the motion.  (*See generally* Mot. for Default J., Dkt. No. 36).  After the Court directed him to do so, (Order dated Aug. 24, 2018), he submitted an affirmation that all Defendants were mailed copies of the motion at 1340 Metropolitan Avenue, Brooklyn, New York 11237 on August 28, 2018, (Affirmation of Service, attached as Ex. 2 to Troy Aug. Letter, Dkt. No. 39 ("Default J. Affirmation")).  This affirmation includes copies of the envelopes used to serve the motion; each envelope contains the words "Address Correction Requested" in the bottom right corner.  (*Id.*).  Again, the affirmation failed to explain the existence of three sets of service affidavits, or why "Address Correction Requested" was on the envelopes.

## DISCUSSION

"A court may not properly enter a default judgment unless it has jurisdiction over the person . . . against whom the judgment is sought, which also means that he must have been effectively served with process."  *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, No. 17-CV-1585, 2017 WL 3242331, at *2 (S.D.N.Y. July 28, 2017) (quotations omitted) (collecting cases), *reconsideration denied*, 322 F.R.D. 442 (Aug. 23, 2017).  "A default judgment obtained by way of defective service is void *ab initio* and must be set aside as a matter of law."  *Aspex Eyewear, Inc. v. Cheuk Ho Optical Int'l Ltd.,* No. 00-CV-2389, 2005 WL 3501900, at *1 (S.D.N.Y. Dec. 21, 2005) (quotations omitted) (granting motion to vacate default judgment); *see Augustin v. Apex Fin. Mgmt.*, No. 14-CV-182, 2015 WL 5657368, at *2 (E.D.N.Y. July 27, 2015) ("Establishing proper service is . . . integral to determining whether the Court has personal jurisdiction over the defaulting defendant.  A default judgment is void if it is rendered by a court that lacks

5

jurisdiction over the parties.") (quotations and citations omitted), *report and recommendation adopted*, 2015 WL 7430008 (Nov. 23, 2015).  On a motion for default judgment, a plaintiff bears the burden of proving service was proper.  *RCC Ventures*, 2017 WL 3242331, at *2.

"Affidavits of service [are] *prima facie* [evidence] that service was effected or attempted in the manner described therein." *Acceptance Ins. Co. v. Home Med. of Am., Inc.*, No. 04-CV-9338, 2005 WL 3471780, at *2 (S.D.N.Y. Dec. 20, 2005).  However, the Court need not assume service was proper, even on a motion for default judgment, if the affidavits are inconsistent or unreliable.  *See, e.g.*, *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050, 2015 WL 1469619, at *6 (E.D.N.Y. Mar. 30, 2015) (adopting report and recommendation) ("In short, the record is internally inconsistent with respect to when and how (and how effectively) the plaintiffs mailed the summonses to the Eagles.  It is entirely possible that the process server did actually mail the summons to each individual defendant on October 8, 2013 (after having initially submitted service affidavits that falsely stated such mailings had already been accomplished), but the record makes such a finding impossible with any reasonable amount of certainty. . . . Accordingly, I conclude that the plaintiffs have failed to establish that this court has personal jurisdiction over the individual defendants.").

As explained below, neither the Complaint nor the motion for default judgment were properly served on any Defendant.

I.     Defects in Service of Complaint

There are several distinct problems with service of the Complaint that require denial of the motion for default judgment.

6

*First*, there is no reliable evidence that service was made on any Defendant. The second and third sets of affidavits—which attest to service on each Defendant—indicate that the Complaint was delivered to Alsie Doe at two places at the same time. (*Compare* Set 2 Affidavits (indicating the Complaint was served at 1340 Metropolitan Avenue at 11:25 AM on August 15, 2017), *with* Set 3 Affidavits (indicating the Complaint was served at 40 East Merrick Road at 11:25 AM on August 15, 2017)). It is impossible for Alsie Doe to have been at both of these locations at the same time, since 1340 Metropolitan Avenue is located in Brooklyn and 40 East Merrick Road is located in Freeport. Although it could be that Set 2 contains an incorrect address and the Complaints were actually delivered to Alsie Doe at 40 East Merrick Road, it could also be that service occurred at both addresses upon different people. It could also be that service occurred on different dates at different places on the same person. It may be that service never occurred at either. The possibilities abound. But the inconsistency between the three sets—and the lack of explanation provided by Troy—leads the Court to conclude that all the affidavits are unreliable. The Set 3 Affidavits also contain information different from the Set 1 Affidavits, which are still on the record. Troy could have withdrawn one of the sets of affidavits or otherwise explained the discrepancy, but he did neither.

Furthermore, the affidavits were signed months after each other, with the affiant in Set 3 averring about events that took place nine months earlier at a precise time and place. The passage of nine months is significant not only because it undermines the veracity of the Set 3 Affidavits, but also because it invalidates service on the Individual Defendants. If an individual is served by leaving the summons with someone else at the individual's workplace, proof of such service must be filed within *20 days*. N.Y. C.P.L.R.

7

§ 308(2); *e.g.*, *Divito v. Fiandach*, 76 N.Y.S.3d 322, 324 (N.Y. App. Div. 2018) ("Plaintiff did not, however, file proof of service . . . within 20 days of the delivery or mailing, and he never applied to the court for leave to file a late proof of service. As a result, plaintiff's subsequent late filing of the proof of service was a nullity.") (citations omitted). To state the obvious, filing proof some 270 days later is deficient.

In light of the absence of any reliable affidavit of service, the Court has no basis to conclude that service of the Complaint was properly affected on any Individual or Corporate Defendant.³

*Second*, using any of the affidavits, the default judgment would still have to be denied, because the method of service was deficient for the Corporate Defendants.⁴

Federal Rule of Civil Procedure 4(h) provides that service on a corporation may proceed in one of two ways. A plaintiff may deliver a copy of the summons and complaint to an officer, managing or general agent, or other agent authorized under law to receive process. Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a plaintiff may serve a

---

³ Under New York law, "'service of a single summons upon an officer of a corporate defendant who is also an individual defendant is effective service on both defendants.'" *JCJ Marketer Corp. v. Tierra Nueva Organic, Inc.*, No. 09-CV-1487, 2010 WL 1292713, at *2 (E.D.N.Y. Mar. 31, 2010) (quoting *Port Chester Elec. Co. v. Ronbed Corp.*, 384 N.Y.S.2d 9, 10 (N.Y. App. Div. 1967)). In other words, if service on Individual Defendants had been proper, it could have constituted proper service on Corporate Defendants to the extent the individuals were officers of the corporation. *See id.* at *3. However, because service on Individual Defendants was not proper, this principle does not apply.

⁴ Quality Woods is registered at 158-03 Sanford Ave, Apt 3d, Flushing, New York 11358. *See* Dep't of State, Div. of Corps., State Records & UCC, *Corp. & Bus. Entity Database Searches*, https://www.dos.ny.gov/corps (last visited Jan. 26, 2019). D C Cabinet, Metropolitan Cabinet, Aotin Trading, and Champion Cabinet are registered at 1340 Metropolitan Avenue. *Id.* Champion Cabinet appears to be registered a second time as Champion Cabinet Factory Inc at the 40 East Merrick Road address. *Id.* D C Cabinet is dissolved and has been inactive since February 14, 2018. *Id.*

corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual[,]" which allows for service according to state law in which the federal district court is located or where service is made. Fed. R. Civ. P. 4(h)(1)(A); 4(e)(1). Under New York law, a corporation can be served through "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1).[5]

It appears Troy attempted to serve the Corporate Defendants through a "managing agent," which is an acceptable method of service under either Federal Rule of Civil Procedure 4(h)(1)(B) or New York C.P.L.R. § 311(a)(1). (*See* Set 3 Affidavits, Dkt. Nos. 25-29 (indicating that service occurred by delivery to "Alsie 'Doe', manager," and that deponent "knew said individual to be a managing agent [of the corporation] authorized to accept service")). The definition of "managing agent" is substantively identical under both rules. *See Cooney v. Barry Sch. of Law*, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014) (noting Rule 4 and New York C.P.L.R. § 311 are based on the same language and "it is therefore appropriate to construe their provisions *in pari materia*"); *Avanti Enters., Inc. v. A&T Produce, Inc.*, No. 09-CV-1185, 2010 WL 3924771, at *1 (E.D.N.Y. July 21, 2010) ("The laws in New York . . . are substantively the same as the federal rule for the purposes [of effectuating service on a corporation]."), *report and recommendation adopted*, 2010 WL 3909243 (Sept. 30, 2010). As explained below, Alsie Doe is not a managing agent, and therefore service was deficient.

---

[5] New York law also allows for service on a business corporation pursuant to § 306 of the business corporation law. N.Y. C.P.L.R. § 311(a)(1). Section 306 of the business corporation law allows service via the New York Secretary of State's office. N.Y. Bus. Corp. Law § 306(b)(1). However, none of the affidavits here purport to have made service on the Secretary of State. (*See generally* Set 1 Affidavits; Set 2 Affidavits; Set 3 Affidavits).

9

"[T]he phrase 'managing or general agent' does not refer to any agent of the corporation, but one who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise." *Cooney*, 994 F. Supp. 2d at 270 (adopting the same definition under both Rule 4 and New York C.P.L.R. § 311); *see also Vistra Tr. Co. v. Stoffel*, No. 08-CV-2844, 2008 WL 5454126, at *7 (S.D.N.Y. Dec. 29, 2008) ("The New York Court of Appeals has held that a section 311(a)(1) 'managing agent' is a 'person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent . . . who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it.'") (quoting *Taylor v. Granite State Provident Ass'n*, 136 N.Y. 343, 346 (1893)). A "managing agent" is not a manager in the colloquial sense, *i.e.* a person whose role is to supervise the day-to-day work of other employees. To hold otherwise "would essentially result in redefining the term 'managing agent' to mean any 'person of suitable age and discretion' employed by the defendant corporation." *Colbert v. Int'l Sec. Bureau Inc.*, 437 N.Y.S.2d 360, 363 (N.Y. App. Div. 1981) (citation omitted). "Person of suitable age" is the less demanding standard for individual service permitted under C.P.L.R. § 308(2).

"A person's actual job title does not control whether he or she is a 'managing agent' under section 311(a)(1). Nor need a person be vested with express authority to accept service." *Vistra*, 2008 WL 5454126, at *7 (citation omitted). "In tendering service, the process server may rely upon the corporation's employees to identify the individuals authorized to accept service. As long as the process server's reliance on corporate personnel is reasonable, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not

10

authorized to accept service." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (citation omitted). An affidavit of a process server creates a presumption of proper service. *Id.*

Troy is not entitled to the presumption attendant to a process server's affidavit of service. As noted earlier, the record contains multiple affidavits for the same date, purporting to serve the Corporate Defendants at the same time on the same person at two addresses far removed from each other. The affidavits also contain insufficient facts upon which a presumption of correct service could be based. All the affidavits say is that "Alsie 'Doe,' manager" received the Complaint, and the pre-printed form avers that "deponent . . . knew said individual to be a managing agent . . . authorized to accept service." (Set 3 Affidavits). How the deponent knew that Alsie Doe was authorized to accept service and was an actual "managing agent" is never stated. This facial infirmity suggests service was not made to a person authorized to accept service. *Augustin*, 2015 WL 5657368, at *3 ("The Court has some concerns about the validity of service of process in this case. . . . Mr. Valentine's affidavit does not describe the basis of his knowledge that Ms. Velasco was 'designated by law to accept service of process on behalf of' Apex."). Where Courts have concluded that service on a "Doe" is proper, the person has affirmatively indicated that she is authorized to accept service on behalf of the corporation. *E.g., Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. 10-CV-4677, 2011 WL 1701795, at *7 (E.D.N.Y. Apr. 30, 2011) (deeming corporate service sufficient where "the process server left a copy of the summons and complaint with 'Ann 'Doe' Manager', who indicated that she was authorized to accept service on behalf of the corporation"). Alsie Doe did not provide any indication that she was authorized to accept service for any Corporate Defendant.

11

There are other facts in the record that lead the Court to conclude that service was not made on a managing agent. The Secretary of State's website, which this Court may take judicial notice of, does not list "Alsie" as someone authorized to accept service. *See J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171, 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 09, 2018) ("The Court can and does take judicial notice of information from the New York Secretary of State's website.") (citing *Tate v. YRC Worldwide, Inc.*, No. 08-CV-7, 2008 WL 1138316, at *2 (E.D.N.Y. Sept. 23, 2008)); Dep't of State, Div. of Corps., State Records & UCC, *Corp. & Bus. Entity Database Searches*, https://www.dos.ny.gov/corps (last visited Jan. 26, 2019). That fact alone would not be sufficient to defeat the presumption accorded to a process server's affidavit, but it is significant in light of the other irregularities discussed.

The Court thus cannot conclude that service of the Complaint occurred on a managing agent of Corporate Defendants. *See, e.g.*, *Cooney*, 994 F. Supp. 2d at 270-71 (finding an employee with "a relatively small role to play within the corporation" did not possess "the kind of senior corporate authority that the term 'managing or general agent,' as defined in Rule 4 and its incorporation of state law, contemplates"); *cf. J & J Sports Prods.*, 2018 WL 4378166, at *2 (undergoing a similar analysis and ordering plaintiff to show cause as to why service was proper on a corporate "cashier" under New York C.P.L.R. § 311).

\*       \*       \*

Troy submitted a declaration in this case in which he averred that service was effectuated on Defendants on August 15, 2017. (Troy Decl. ¶¶ 6-7). The evidence submitted with the motion papers suggests there was no basis to make that statement.

12

Troy's costs application seeks to recoup an astounding $2,250.98 in service fees and thereby impose the costs of his failures of service on Defendants. (*See* Att'y Invoice, attached as Ex. 2 to Troy Decl., Dkt. No. 37 ("First Troy Invoice")).[6] Besides the bloated nature of the request and the impropriety of seeking to recover costs for errors caused by Troy, the costs application suggests service was not made on the dates indicated in the affidavits.

The application charges $125 per Defendant for service with an "expense date" of May 19, 2017 and then charges an additional $125 per Defendant for re-service "at a new location," again on May 19, 2017. (*Id.*). Presumably this refers to the first two attempts to serve Defendants, *i.e.* Set 1 and Set 2 Affidavits. May 19 was seven days before the first wave of service allegedly occurred and three months before the second wave of service allegedly occurred. (*Compare id.*, *with* Set 1 Affidavits (indicating service was completed on May 26, 2017), *and* Set 2 Affidavits (indicating service was completed on August 15, 2017)). Perhaps there is some explanation for charging an expense before it is incurred, but none is provided. But most importantly, there is no cost line item for service on August 15, 2017, the date on which Set 3 Affidavits claim service was done. Nor is there one associated for May 2018, when the Set 3 Affidavits were notarized. The absence a line item for service of process in August 2017 or May 2018 suggests there was no service consummated in August 2017 and the Set 3 Affidavits are false, incomplete, or both.

---

[6] The application requests reimbursement of expenses totaling $2,650.98, with $400 in filing fees and the rest in costs associated with service. (*See* First Troy Invoice).

13

This is not the first time this Court has raised serious questions about the submissions made by Troy. *See, e.g.*, *Shi v. DXN Mike Corp.*, No. 16-CV-5185, Order dated Nov. 28, 2018 (warning the parties that, should they submit "yet another error-filled, unsigned, or otherwise defective cost application . . . [for FLSA settlement approval], the Court will not approve a single dollar in cost recovery and will direct as a sanction that the costs incurred be borne solely by [Troy Law]"). Other courts have found similar issues and defects in actions brought by Troy. *See, e.g.*, *Xue Hui Zhang v. Ichiban Grp., LLC*, No. 17-CV-148, 2018 WL 3597632, at *1, 4 (N.D.N.Y. July 26, 2018) (dismissing the action against individual defendants based on improper service of process after plaintiff had been given two opportunities to serve the Complaint); *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655, 2016 WL 2903278, at *9 (S.D.N.Y. May 18, 2016) (dismissing, *sua sponte*, the action as to several defendants "due to plaintiffs' failure to timely serve them").

II.     Defects in Service of Motion for Default Judgment

Service of the motion for default judgment contains similar discrepancies that warrant denial. "[A] motion for default judgment will not be granted unless the party making that motion adheres to certain local and individual rules." *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474, 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 13, 2015). Service of the motion on non-appearing defendants is of particular importance, because "mailing notice of such an application is conducive to both fairness and efficiency[.]" Committee Note, Loc. Civ. R. 55.2; *see Transatlantic Auto Grp., Inc. v. Unitrans-Pra Co.*, No. 08-CV-5070, 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011) (noting the local rules relating to default provide more protection for non-appearing defendants than the Federal Rules of Civil Procedure to promote fairness and efficiency), *report*

14

*and recommendation adopted*, 2011 WL 4543838 (Sept. 29, 2011).  Service of the motion for default judgment is deficient with respect to both the Corporate and Individual Defendants.

For the Corporate Defendants, Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought . . . [at] the last known business address of such party (if a person other than an individual)."  Loc. Civ. R. 55.2(c).  The motion was mailed to 1340 Metropolitan Avenue, (Default J. Affirmation), but Troy's Memorandum of Law submitted with the motion states that the Corporate Defendants are "located at" the 40 East Merrick Road address, (Mem. of Law in Support of Mot. for Default J., Dkt. No. 38 ("Troy Mem.") at 5).  Again, this conflicts with the address listed in the Complaint, (*see* Compl. ¶ 8), and the addresses listed on the Secretary of State's website, (*see supra* note 4).  It appears therefore that the default judgment motion was not served on the Corporate Defendants at their last known business address.  At a minimum, the confusion about when service was made and what is the proper address of the Corporate Defendants warrants denial of the motion.  *See, e.g.*, *Augustin*, 2015 WL 5657368, at *3 ("[I]t is not clear that these documents were mailed to Apex at the last known business address of such party.  Plaintiff's failure to comply with Local Civil Rule 55.2 alone warrants denial of the motion, without prejudice to renew with an affidavit demonstrating proper service.") (quotations and citations omitted) (collecting cases); *Transatlantic Auto Grp.*, 2011 WL 4543877, at *19 (denying default judgment motion in part because, "compounding the due process concern of adequate notice, neither party

15

has indicated whether their motions for default judgment were ever served upon [non-appearing corporate defendant]").[7]

As for the Individual Defendants, Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual)[.]" Loc. Civ. R. 55.2(c). The motion was mailed to 1340 Metropolitan Avenue, which is clearly a business address, not their residential address. Again, failure to comply with local rules warrants denial of the motion for default judgment. *See, e.g.*, *Bhagwat*, 2015 WL 13738456, at *1 (denying default judgment motion against individuals in part for "fail[ure] to include . . . proof of mailing that this motion was served upon defaultees' last known mailing address").

Furthermore, Troy charged Defendants for an "envelope and postage charge" of $0.98 associated with service of the Complaint on October 30, 2017. Troy's second application for expenses does not contain similar charges for mailing the default judgment motion, even though he was mailing nine different envelopes. (*See generally* Att'y Invoice, attached as Ex. 1 to Troy Aug. Letter, Dkt. No. 39 ("Second Troy Invoice")).[8] This suggests that service of the motion for default judgment was not in fact made.

---

[7] The "Address Correction Requested" marking on the envelopes used to mail Defendants the motion suggests Troy himself is unsure that 1340 Metropolitan Avenue is the proper address. (*See* Default J. Affirmation).

[8] The second expense submission is identical to the first, and no explanation is provided by Troy why it was filed twice.

To compound the problem, even if the addresses were proper, the content of the mailing does not comply with the local rules. Local Rule 55.2(c) requires that "all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) . . . be mailed to the party against whom a default judgment is sought[.]" Loc. Civ. R. 55.2(c). The papers required to be submitted to the Court, and thus required to be mailed to non-appearing defendants, include: "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Loc. Civ. R. 55.2(b). Although Troy did mail the Clerk's certificate of default and a proposed form of default judgment, Troy did not mail a copy of the claim, *i.e.* the Complaint. (*See* Default J. Affirmation (indicating "Dkt. No. 36 to Dkt. No. 38" were mailed to Defendants); *see generally* Mot. for Default J., Dkt. No. 36 (failing to include a copy of the claim); Troy Decl., Dkt. No. 37 (same); Troy Mem., Dkt. No. 38 (same)).[9] This deficiency also warrants denial of the motion. *See, e.g.*, *Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13-CV-253, 2015 WL 13741871, at *7 (E.D.N.Y. Sept. 21, 2015) (denying motion for default judgment for failure to mail defendants the documents enumerated in Local Rule 55.2(b)).

---

[9] This also means Troy's submissions to the Court are inadequate under Local Rule 55.2(b), since he did not append a copy of the unanswered claim to the motion papers submitted. This is yet another reason to deny the motion. *See, e.g.*, *Johnson v. Wolan*, No. 10-CV-1622, 2010 WL 5076821, at *3 (S.D.N.Y. Dec. 13, 2010) (denying motion for default judgment for several reasons, including that "the motion does not have appended to it any of the documents required by this Court[']s Local Rules for entry of a default judgment by the Court"); *Joe Hand Promotions, Inc. v. Meunier*, No. 15-CV-1334, 2016 WL 3659913, at *2 (N.D.N.Y. June 30, 2016) ("Plaintiff has failed to comply with Local Rule 55.2(b), which requires the moving party to submit a copy of the pleading to which no response was made. Plaintiff did not submit a copy of the Complaint with its Motion for default judgment. . . . Plaintiff's Motion for default judgment is denied.") (citations omitted).

17

CONCLUSION

Each of these inconsistencies and questions lead the Court to conclude that the Complaint and the motion for default judgment were not properly served on each and every Defendant. Counsel's demonstrated lack of knowledge about the proper service addresses, the means of service, the timing of service, what needs to be served, and the operation of the Local Rules of this Court cannot be excused, and the default judgment—which seeks in excess of $100,000—should be denied. *See, e.g., Gunderson Amazing Fireworks, LLC v. Merrick Bank*, No. 12-CV-3869, 2016 WL 8711445, at \*6 (E.D.N.Y. Feb. 19, 2016) ("[A] district court therefore must ensure that the defaulting defendants received notice of the claims against them and were provided an opportunity to answer those allegations before entering default judgment. . . . Accordingly, because Plaintiffs have not shown that they properly served Pinnacle with the CSAC, the procedural prerequisites of Rule 55 are not satisfied and Plaintiffs motion for a default judgment should be denied.") (quotations and citations omitted), *report and recommendation adopted*, Order dated Mar. 31, 2016, Dkt. No. 142; *Lliviganay v. Cipriani 110 LLC*, No. 09-CV-737, 2009 WL 1044606, at \*1 (S.D.N.Y. Apr. 14, 2009) (denying default judgment because "it is not clear that these defendants were properly served").

The Court, therefore, respectfully recommends that the motion for default judgment be denied without prejudice.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601,

604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision.") (quotations omitted).

SO ORDERED.

*/s/ Sanket J. Bulsara* January 28, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

19