UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FENG LIN, *on behalf of himself and others similarly situated*,<br><br>           Plaintiff,<br><br>    *v.*<br><br>QUALITY WOODS, INC., *d/b/a* QUALITY WOODS; D C CABINET FACTORY INC., *d/b/a* QUALITY WOODS; METROPOLITAN CABINET FACTORY, INC., *d/b/a* QUALITY WOODS; AOTIN TRADING INC., *d/b/a* QUALITY WOODS; CHAMPION CABINET, INC., *d/b/a/* QUALITY WOODS; WEI GAO; WEI ZHAN CHEN, *a/k/a* DEAN CHEN; DING CHEN; and JAMES WANG,<br><br>           Defendants. | **REPORT & RECOMMENDATION**<br>17-CV-3043-DLI-SJB |

**BULSARA, United States Magistrate Judge:**

This action was commenced over four years ago by a Complaint signed and submitted by John Troy ("Troy") of Troy Law, PLLC ("Troy Law"), on behalf of Plaintiff Feng Lin ("Lin").[1]  Currently before the Court is Troy's third motion for default judgment on Lin's behalf.[2]  The motion was referred to the undersigned for a report and recommendation by the Honorable Dora L. Irizarry.[3]

---

[1] Compl. dated May 19, 2017 ("Compl."), Dkt. No. 1.

[2] Notice of Renewed Mot. for Default J. dated Jan. 19, 2021 ("Third Mot."), Dkt. No. 81; Decl. of John Troy in Supp. of Third Mot. dated Jan. 19, 2021 ("Jan. 2021 Troy Decl."), Dkt. No. 82; EEOC Complainant Aff. dated June 28, 2017 ("June 2017 Lin Aff."), attached as Ex. 13 to Jan. 2021 Troy Decl., Dkt. No. 82.

[3] Order Referring Mot. dated Jan. 20, 2021.  Troy concurrently filed a motion for attorney's fees, (Notice of Renewed Mot. for Att'ys' Fees and Costs dated Jan. 19, 2021, Dkt. No. 85), which Judge Irizarry also referred for a report and recommendation, (Order Referring Mot. dated Jan. 20, 2021).

Over the last four years, Troy has advanced claims he knew or should have known to be meritless, made false or baseless statements to the Court, and submitted false or baseless statements made by others to the Court.  The result is a dizzying array of discordant factual allegations and incompatible theories of liability, from which the Court cannot recommend the entry of a default judgment.  And even if the Court were to grant the motion on liability, the Court would be unable to ascertain damages from the wholly incoherent record before it.  For the reasons outlined below, the Court respectfully recommends the motion be denied in its entirety.

PROCEDURAL HISTORY

The Complaint was filed on May 19, 2017.  (Compl.).  It named nine Defendants: Quality Woods, Inc. ("Quality Woods"), D C Cabinet Factory Inc. ("D C Cabinet Factory"), Metropolitan Cabinet Factory, Inc. ("Metropolitan Cabinet"), Aotin Trading Inc. ("Aotin Trading"), Champion Cabinet, Inc. ("Champion Cabinet"), Wei Gao, Wei Zhan Chen, Ding Chen, and James Wang.  (*Id.* ¶¶ 9, 12, 15, 18, 21, 26, 28, 30, 32).  The Complaint alleged that Lin was employed by Quality Woods, D C Cabinet Factory, Metropolitan Cabinet, Aotin Trading, and Champion Cabinet from March 1, 2015 to May 28, 2016.  (*Id.* ¶¶ 8, 24, 35, 50).  Troy stated each entity "do[es] business as Quality Woods, at the same location, and are owned by the same Defendants," (*id.* ¶ 36), or, "[i]n the alternative, they are joint employers," (*id.* ¶ 37), or successor employers, (*see id.* ¶ 35).  Troy alleged all five corporations were located at 1340 Metropolitan Avenue, Brooklyn, New York 11237 ("1340 Metropolitan Avenue").  (*Id.* ¶¶ 8–9, 12, 15, 18, 21, 36).  It further alleged that the individual Defendants Wei Gao, Wei Zhan Chen, Ding Chen, and James Wang managed Lin and were collectively the "officers, directors, managers, and/or majority shareholders or owners of the corporate Defendants."  (*Id.*

¶¶ 25–33).  The Complaint stated that Lin was a carpenter, (*id.* ¶¶ 50–51), but simultaneously implied that Defendants operated a restaurant, (*id.* ¶ 45 ("[W]hen a customer left the restaurant without paying, Defendants would use servers' tips from previous customers to cover the bill."); *accord id.* ¶¶ 4, 46, 49, 126(e)).

At the outset, Troy asserted 11 causes of action against each of the nine Defendants.  Nine causes of action arose from Defendants' purported violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), namely, violation of the minimum-wage and overtime provisions of the FLSA and NYLL, as well as the spread-of-hours, meal break, and notice and recordkeeping requirements of the NYLL.  (*Id.* ¶¶ 75–118).  The FLSA claims were asserted on behalf of Lin and a putative collective, (*id.* ¶ 65), and NYLL claims on behalf of Lin and a putative class, (*id.* ¶¶ 66–74).  The remaining two causes of action arose from Defendants' alleged filing of fraudulent federal, (*id.* ¶¶ 120–21), and state, (*id.* ¶¶ 123–25), tax returns.

In the Complaint, Troy recited Lin's "regular work schedule": Lin worked from March 1, 2015 to May 28, 2016, six days a week, from 9 AM to 9 PM, with a half-hour break from 6 to 6:30 PM.  (*Id.* ¶ 53).  Lin was required to work on a Sunday twice, also from 9 AM to 9 PM, with a half-hour break from 6 to 6:30 PM, (*id.* ¶ 54), and he was paid a flat rate of $3,800 per month in cash, (*id.* ¶¶ 59–61).  Lin took one meal break per day, between 15 and 20 minutes.  (*Id.* ¶ 57).

Troy's initial efforts at service of the Complaint are detailed in the Court's prior report and recommendation, *Feng Lin v. Quality Woods, Inc. (Quality Woods I)*, No. 17-CV-3043, 2019 WL 1450746 (E.D.N.Y. Jan. 28, 2019), which was adopted on March 31, 2019, (Order dated Mar. 31, 2019).  In sum, Troy filed three sets of affidavits of service on the docket between June 2017 and May 2018.  *Quality Woods I*, 2019 WL

1450746, at *2.  The first set indicated service was completed on all Defendants at 1340 Metropolitan Avenue on May 26, 2017.  *Id.*  The second set indicated service was completed on all Defendants at 1340 Metropolitan Avenue on August 15, 2017.  *Id.*  The third set of affidavits of service, styled as amended versions of the second set, indicated all Defendants were served at a different address, 40 East Merrick Road, Freeport, New York, 11520 ("40 East Merrick Road") on August 15, 2017.  *Id.*  The Court found "there [wa]s no reliable evidence that service was made on any Defendant."  *Id.* at *3.

Troy filed his first motion for default judgment on June 21, 2018.[4]  He sought default judgment against all Defendants on Lin's overtime, minimum-wage,[5] spread-of-hours, and wage notice and statement claims only.  (June 2018 Troy Decl. ¶ 1).  He submitted a declaration by Lin in support of the motion, in which Lin averred he was employed by Quality Woods at 40 East Merrick Road from March 1, 2015 to May 28, 2016.  (June 2018 Lin Decl. ¶¶ 3–4).  In this declaration, Lin recounted a different work schedule than the one alleged in the Complaint: this time, he said he worked six days a week, but only from 9 AM to 6 PM, (June 2018 Lin Decl. ¶ 5), not 9 AM to 9 PM.  Instead, he worked an additional shift from 6:30 PM to 9 PM only three or four times.  (*Id.* ¶ 6).  And he worked on three or four Sundays—not two—and from 9 AM to 6 PM—

---

[4] Notice of Mot. for Default J. dated June 21, 2018 ("First Mot."), Dkt. No. 36; Decl. of John Troy in Supp. of First Mot. dated June 21, 2018 ("June 2018 Troy Decl."), Dkt. No. 37; Decl. of Fenglin in Supp. of First Mot. dated June 9, 2018 ("June 2018 Lin Decl."), attached as Ex. 5 to June 2018 Troy Decl., Dkt. No. 37.

[5] The damages calculations submitted with this motion, however, indicated Lin was not entitled to recover unpaid minimum wages.  (Damages Calculations, attached as Ex. 4 to June 2018 Troy Decl., Dkt. No. 37).

not 9 AM to 9 PM.  (*Id.* ¶ 7).[6]  Lin repeated that he was paid $3,800 in cash every month

and only took one 15 to 20 minute meal break a day.  (June 2018 Lin Decl. ¶¶ 8, 10).

The Court recommended this first motion be denied without prejudice for

improper service of the Complaint and the motion itself.  *Quality Woods I*, 2019 WL

1450746, at *8.  The Court also warned Troy of the "significant substantive

discrepancies in the Complaint," including the dearth of information about Defendants'

business from which the Court "c[ould] determine whether FLSA applies to them."  *Id.*

at *1 n.2.  "[E]ven if the Court had concluded that service was proper it in this case, it

would have no basis to calculate the damages sought or enter a default judgment."  *Id.*

The report and recommendation was adopted, (Order dated Mar. 31, 2019), and

Judge Irizarry ordered Troy to file proof of service upon each Defendant by May 1, 2019,

(*id.*).

On April 9, 2019, Troy submitted a letter to the Court purporting to explain the

three sets of affidavits of service filed years earlier.  (Letter dated Apr. 9, 2019, Dkt. No.

50).  He stated that, "[s]ometime after Defendants were served with the Complaint,

Plaintiff learned that Defendants have moved to a new location": the 40 East Merrick

Road address.  (*Id.* at 1).  Troy wrote that, after this discovery, he directed Defendants be

re-served at that address, but the process server listed 1340 Metropolitan Avenue by

mistake.  (*Id.*).  The third set of affidavits of service, Troy explained, were actually

amended versions of the second set, made to reflect the service actually accomplished

after Troy noticed the error in May 2018.  (*Id.*).  He then stated that he intended to

---

[6] This schedule was also different than the one Troy described in the brief in support of the motion—his memorandum echoed the allegations of a 9 AM to 9 PM work schedule as set forth in the Complaint.  (Mem. of Law in Supp. of First Mot. dated June 21, 2018, Dkt. No. 38, at 5).

renew Lin's motion for default judgment. (*See id.* at 2). Instead, Troy took no action for over a year.

On May 14, 2020, the Court directed Lin to show cause and explain why the case should not be dismissed for the year-long failure to prosecute the case. (Order to Show Cause dated May 14, 2020). In response, Troy reiterated his belief that all Defendants were properly served at 40 East Merrick Road and sought permission to renew the motion for default judgment. (Letter dated May 20, 2020, Dkt. No. 51). The Court, unconvinced that service was ever properly effectuated, extended the time for Troy to serve the Complaint to August 26, 2020. (Order dated May 28, 2020).

Troy filed an affidavit of service on June 22, 2020—his fourth attempt at properly serving Defendants. (Aff. of Service dated June 22, 2020 ("Fourth Executed Summons"), Dkt. No. 52). The affidavit stated that Quality Woods, Metropolitan Cabinet, Champion Cabinet, and Wei Gao were served with summonses and a motion for summary judgment on June 18, 2020 by delivery to Wei Gao at both 158-03 Sanford Avenue, Apartment 3D, Flushing, New York 11358 ("158-03 Sanford Avenue") and 1340 Metropolitan Avenue. (*Id.* at 1). Following the filing of the executed summons, Troy sought a second certificate of default as to these four Defendants. (Req. for Clerk's Certificate of Default dated Aug. 19, 2020, Dkt. No. 53). On September 8, 2020, this Court directed Troy Law to explain the inconsistencies in the executed summons and show cause why the action should not be dismissed against Defendants D C Cabinet, Aotin Trading, Wei Zhan Chen, Ding Chen, and James Wang, who were not listed. (Order to Show Cause dated Sept. 8, 2020). Among the inconsistencies, the executed summons indicated (1) a motion for summary judgment in lieu of complaint was served upon these four Defendants, though this case was initiated by the Complaint and no

summary judgment motion was ever filed; (2) the documents were served at both 158-03 Sanford Avenue (in Queens) and 1340 Metropolitan Avenue (in Brooklyn) at the exact same time; and (3) service was actually only completed at 158-03 Sanford Avenue rather than 1340 Metropolitan Avenue, which was depicted by photographs attached to the executed summons. (*See id.*; *see also* Fourth Executed Summons).

In response, Aaron Schweitzer ("Schweitzer")—managing associate of Troy Law—appeared in the case and filed a letter that stated both that Champion Cabinet was no longer doing business at 1340 Metropolitan Avenue, (Letter dated Sept. 11, 2021, Dkt. No. 58, at 3), and its "usual place of business" was 1340 Metropolitan Avenue, (*id.*). Schweitzer also explained "[u]pon conferring with our client" D C Cabinet Factory, Aotin Trading, Wei Zhan Chen, Ding Chen, and James Wang were not Lin's employer, but rather "the sub-landlord" and "co-tenants" of Quality Woods and their "corporate representatives." (*Id.* at 4). He also intimated that he learned, after reviewing public records, that Wei Gao was no longer affiliated with Metropolitan Cabinet. (*Id.*). Contemporaneously with his letter, Schweitzer filed a notice of voluntary dismissal as to D C Cabinet Factory, Aotin Trading, Metropolitan Cabinet, Wei Zhan Chen, Ding Chen, and James Wang. (Notice of Voluntary Dismissal of Defs. dated Sept. 11, 2020, Dkt. No. 57). He also filed a third request for entry of default against Quality Woods, Champion Cabinet, and Wei Gao. (Req. for Clerk's Certificate of Default dated Nov. 5, 2020, Dkt. No. 61). This request was granted. (Certificate of Default dated Nov. 10, 2021 ("Certificate of Default"), Dkt. No. 62).

On December 28, 2020, Troy filed a second motion for default judgment.[7]  In this motion, he sought relief against Quality Woods, Champion Cabinet, and Wei Gao only, and judgment on Lin's minimum-wage,[8] overtime, spread-of-hours, and wage notification claims only.  (Dec. 2020 Troy Decl. ¶ 1).  Troy included a new declaration by Lin, which stated Lin was only employed by Quality Woods at 40 East Merrick Road.  (Dec. 2020 Lin Decl. ¶ 3).  In this declaration, Lin repeated the same work schedule as in the declaration submitted with the first default judgment motion: he worked for Quality Woods from March 1, 2015 to May 28, 2016, from 9 AM to 6 PM Monday through Saturday, (*id.* ¶¶ 4–5); three or four times during his employment he was required to perform additional work from 6:30 PM to 9 PM, (*id.* ¶ 6); and three or four times during his employment he was required to work on Sunday from 9 AM to 6 PM, (*id.* ¶ 7).  He was paid $3,800 in cash monthly, and he took one 15 to 20 minute meal break every day.  (*Id.* ¶¶ 8, 10).

The motion was denied for failure to comply with Local Civil Rule 55.2.  (Order dated Jan. 5, 2021).  Troy filed a third motion for default judgment on January 19, 2021, which is currently before the Court.  (Third Mot.).  With this motion, Troy included a declaration in which he makes a number of contentions about Quality Woods and Champion Cabinet.  He asserts both companies were owned by Wei Gao, (Jan. 2021 Troy Decl. ¶ 9), that the 1340 Metropolitan Avenue location of Quality Woods was "no

---

[7] Notice of Mot. for Default J. dated Dec. 28, 2020 ("Second Mot."), Dkt. No. 67; Decl. of John Troy in Supp. of Second Mot. dated Dec. 28, 2020 ("Dec. 2020 Troy Decl."), Dkt. No. 68; Decl. of Fenglin in Supp. of Second Mot. dated Dec. 2, 2020 ("Dec. 2020 Lin Decl."), attached as Ex. 5 to Dec. 2020 Troy Decl., Dkt. No. 68.

[8] Yet, as before, Troy's damages calculations—submitted with the second motion for default—indicated Lin was entitled to no recovery for minimum-wage violations. (Damages Calculations attached as Ex. 4 to Dec. 2020 Troy Decl., Dkt. No. 68).

longer in business," (*id.* ¶ 10), and that Champion Cabinet moved from 1340

Metropolitan Avenue to 40 East Merrick Road, (*id.*).  He stated, for the first time, that

Champion Cabinet moved to 38 East Merrick Road, Freeport, New York 11520 ("38 East

Merrick Road").  (*Id.*).  In support of his declaration, Troy attached LexisNexis search

results indicating "Champion Cabinet" engaged in carpentry and furniture retail and

operated at 38 East Merrick Road.  (Records dated Jan. 19, 2021 ("Champion Cabinet

LexisNexis Records"), attached as Ex. 5 to Jan. 2021 Troy Decl., Dkt. No. 82).  He also

attached LexisNexis search results for a different entity altogether, Champion Cabinet

*Factory* Inc., which was incorporated in December 2018, with an address at 40 East

Merrick Road, and described as a "wood kitchen cabinet and countertop manufacturing"

business or a "furniture and home furnishings store[ ]."  (Records dated Jan. 19, 2021

("Champion Cabinet Factory LexisNexis Records"), attached as Ex. 6 to Jan. 2021 Troy

Decl., Dkt. No. 82, at 2, 4).

The motion reattached Lin's December 2020 declaration, repeating the

allegations that Lin worked for Quality Woods at 40 East Merrick Road from March 1,

2015 to May 28, 2016, his regular schedule was 9 AM to 6 PM Monday through

Saturday, and that three or four times during his employment he was required to

perform additional work from 6:30 PM to 9 PM during the week and from 9 AM to 6 PM

on Sunday.  (Dec. 2020 Lin Decl. ¶¶ 3–7).

The motion also included, for the first time, a June 2017 affidavit by Lin, entitled

"EEOC Complainant Affidavit," which again painted a different picture of Lin's

employment.  (June 2017 Lin Aff.).

In this June 2017 affidavit, Lin stated he was employed by Quality Woods at 1340

Metropolitan Avenue from March 1, 2015 to May 28, 2016 as a carpenter.  (*Id.* ¶¶ 4–5,

13).  He explained that, as of April 16, 2017, Quality Woods changed its name to Champion Cabinet and moved to 40 East Merrick Road.  (*Id.* ¶¶ 6–7).  He stated that both Quality Woods and Champion Cabinet are owned and managed by Wei Gao and both businesses had the same telephone number.  (*Id.* ¶¶ 8–9).  The affidavit also details a different set of complaints about Quality Woods: namely, that Lin contracted an infection at work from handling insect-infested wood, (*id.* ¶¶ 14–16); was unable to work for two months, (*id.* ¶¶ 20, 24); and, when he attempted to return to work, Gao told Lin he was no longer needed, (*id.* ¶¶ 33–36).  Lin called 311 to report he was injured at work in July 2016, (*id.* ¶ 32), and Lin hypothesized that, in retaliation for this report, Wei Gao called the police and Lin was arrested on a series of trumped-up criminal charges, (*id.* ¶¶ 50, 53–60).  Troy does not seek relief stemming from Lin's workplace injury or his termination.  (Compl.).

The Court conducted an inquest on May 19, 2021.[9]  Lin testified under oath that he worked for Quality Woods, which was owned by Wei Gao alone, from March 2015 to May 28, 2016.  (Inquest Tr. at 5:05–:08, 7:15–8:02, 12:15–:19).  He testified multiple times that he worked only at the 1340 Metropolitan Avenue location, (*id.* at 5:11–:12, 5:23–:24, 6:12–:17), and that he never worked on Long Island, (*id.* at 9:03–:05, 13:02–:04), that is, at either Merrick Road address.  He also testified multiple times that he had never worked for, and in some cases never heard of, Champion Cabinet, Aotin Trading, Metropolitan Cabinet, Wei Zhan Chen or Dean Chen, or James Wang.  (*Id.* at

---

[9] Min. Entry and Order dated May 19, 2021; Tr. of Civil Cause for Inquest Hr'g dated May 19, 2021 ("Inquest Tr."), Dkt. No. 105.

8:13–:19, 9:06–:22, 12:02–:12, 13:05–:07, 16:20–17:02, 22:19–:21).[10]  He also mentioned three coworkers: "Tong," who was his peer and had no management role in the business or ownership in the company, (*id.* at 9:23–10:07); a "Mr. Gao Lee," whom he called an "ex-coworker" and saw "coming in and out of" 40 East Merrick Road in the summer of 2016, (*id.* at 23:03–:09); and when Lin was explaining how he came to know the 40 East Merrick Road address, Lin said he knew the address because "Mr. Cheng"— apparently another coworker—"was sent over to that location to work a couple of times" in the summer of 2015, (*id.* at 22:03–:12).

Lin also testified as to his work schedule.  He agreed that certain statements in his prior declarations were true; namely, that he worked from March 1, 2015 to May 28, 2016, from 9 AM to 6 PM, that three or four times he was required to stay late from 6:30 PM to 9 PM, and that three or four times he was required to work on Sundays from 9 AM to 6 PM.  (*Id.* at 14:08–15:03).  He agreed he was paid $3,800 in cash every month.  (*Id.* at 15:04–:09).

At the conclusion of the inquest, the Court informed Lin's counsel, Schweitzer, that he would be permitted to file a supplemental brief and would be directed to show cause to explain the inconsistencies between Lin's testimony and the papers filed by Troy Law.  (*Id.* at 28:01–:17).  The Court issued a written Order to Show Cause on June 4, 2021.  *Feng Lin v. Quality Woods, Inc. (Quality Woods II)*, No. 17-CV-3043, 2021 WL 2343179 (E.D.N.Y. June 4, 2021).

---

[10] For example, Lin testified D C Cabinet Factory was another tenant of the warehouse at 1340 Metropolitan Avenue, owned by Ding Chen, and that D C Cabinet Factory had no other relationship to Quality Woods.  (*Id.* at 11:24–12:06, 23:13–25:06).  He explained that he never worked for D C Cabinet Factory or Ding Chen.  (*Id.* at 8:13–:19, 9:13–:15, 11:24–12:06, 25:01–:06).

Troy filed a combined supplemental submission and response to the Order to Show Cause on June 18, 2021.  (Suppl. to Briefing on Mot. for Default & Resp. to Order to Show Cause dated June 18, 2021 ("OTSC Resp."), Dkt. No. 107).  In this supplemental submission, Troy abandoned Lin's minimum wage and spread-of-hours claims.  (*Id.* at 2 ("Accordingly, under neither the FLSA nor the NYLL does Mr. Lin have minimum wage damages.  Nor does Mr. Lin have more than *de minimis* spread of time damages, as his regular hours each day amounted to less than 10 hours and on this record there were, at most, four days during Mr. Lin's employment that exceeded a spread of 10 hours.")).  Troy pressed Lin's claims for overtime wages, including liquidated damages, his claims pursuant to the NYLL wage notice and statement provisions, and claims for prejudgment interest, attorney's fees and costs, and post-judgment interest.  (*See id.* at 1–3).  Troy also attached information gathered during Lin's intake with Troy Law, which reflected yet another work schedule: Lin worked six days a week from 9 AM to 6 PM, with 15 to 20 minute meal breaks, and an additional shift from 6:30 PM to 7 PM or 9 PM four times a year, (Email dated Apr. 5, 2017, attached as Ex. 1 to OTSC Resp., Dkt. No. 107), and additional shifts on only two Sundays, (Email dated Apr. 7, 2017, attached as Ex. 2 to OTSC Resp., Dkt. No. 107).

Troy also advanced the theory that Champion Cabinet is a "successor employer" of Quality Woods.  (OTSC Resp. at 3–5).  He contended that Wei Gao moved his business from 1340 Metropolitan Avenue to 38 and 40 East Merrick Road and changed its name to Champion Cabinet.  (*Id.* at 3).  Highlighting two coworkers Lin mentioned at the inquest, Troy argued Champion Cabinet is a "substantial continuity" of Quality Woods.  (*Id.* at 3–4).  Troy also offered myriad explanations for maintaining this action against the other six Defendants for several years, (*see id.* at 5–7), which will be

addressed by this Court in a separate opinion concerning the propriety of Rule 11 sanctions for Troy's conduct in this case.

For the reasons outlined below, the Court recommends the motion for default judgment be denied in its entirety and the case closed.

<u>DISCUSSION</u>

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment."  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  *Id.* r. 55(b)(2).

Under Rule 55, in deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

"A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading."  *Mateo v. Universal Language Corp.*, No. 13-CV-

13

2495, 2015 WL 5655689, at *4, 6–7 (E.D.N.Y. Sept. 4, 2015) (finding defendant was not plaintiff's employer based on his testimony that contradicted allegations in the complaint), *report and recommendation adopted*, 2015 WL 5664498 (Sept. 23, 2015). For example, an allegation is not "well-pleaded" if is contradicted by other evidence put forth by the plaintiff. *See id.* at *6–7; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded.").

Whether to enter a default judgment is committed to the discretion of the district court, within the limits articulated by the Second Circuit. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."). That is, the Second Circuit "ha[s] 'a strong preference for resolving disputes on the merits'" and has cautioned that "'a default judgment is the most severe sanction which the court may apply.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). In keeping with this directive—that default judgments are an "extreme" remedy to be rarely granted, *Enron Oil*, 10 F.3d at 92—the Court is within its discretion to deny a procedurally valid motion for default judgment where the complaint's allegations are contradicted by one another or by a plaintiff's other offered evidence, *see, e.g.*, *Freedom Mortg. Corp. v. Gregg*, No. 19-CV-861, 2020 WL 4720028, at *1 (E.D.N.Y. July 24, 2020) (recommending denial of foreclosure motion against defaulting defendant where complaint sought foreclosure on one lot but annexed supporting documents only referenced encumbrances on different lots), *report and*

*recommendation adopted*, 2020 WL 4719280 (Aug. 14, 2020); *J & J Sports Prods., Inc. v. Exclusive Lounge & Grill Inc.*, No. 15-CV-6534, 2017 WL 1082416, at *3 (E.D.N.Y. Mar. 22, 2017) (denying default judgment motion and dismissing case where default was entered but there were discrepancies between complaint and documentary evidence such that the court could not conclude plaintiff possessed standing).

Lin now seeks judgment on only four of the claims alleged in his Complaint, namely, violations of the overtime provisions of (1) FLSA, 29 U.S.C. § 207(a), and (2) NYLL, 12 N.Y.C.C.R. § 142-2.2; (3) failure to provide wage statements in violation of NYLL, N.Y. Lab. Law § 195(3); and (4) failure to provide wage notices in violation of NYLL, N.Y. Lab. Law § 195(1).  (OTSC Resp. at 1–3; *see* Compl. ¶¶ 85–90 (FLSA overtime), 92–95 (NYLL overtime), 111–14 (wage notices), 116–18 (wage statements)). Although the Clerk of Court has entered a default against the current Defendants, (Certificate of Default), following apparently proper service upon each, and Defendants' failure to respond despite numerous opportunities to do so, the Court finds it would be inappropriate to enter a default judgment in this case.  Nor, as set forth below, is the imposition of liability appropriate.  Instead, the Court recommends the motion be denied in its entirety.  First, the Court finds Champion Cabinet is not liable to Lin as a successor employer under FLSA or NYLL and recommends it be dismissed from the case.  Second, the Court finds Lin has failed to demonstrate Quality Woods is a covered employer under FLSA.  Third, and in the alternative, the Court finds Lin has not stated a cognizable claim for overtime under either FLSA or NYLL.  And fourth, in light of these findings, the Court recommends supplemental jurisdiction be declined over Lin's remaining state-law claims.

I.    Champion Cabinet

Troy's latest theory of Champion Cabinet's liability is that it "shows substantial

continuity with" Quality Woods and is as a result liable for Champion Cabinet's wage-

and-hour violations.  (OTSC Resp. at 3–5).  This argument is meritless.

"The theory [of substantial continuity] provides a basis for liability under the

FLSA where a purchasing company acquires the assets of another company, but 'is not

[otherwise] liable for the seller's liabilities' under the common law test for successor

liability."  *Grant v. HER Imps. NY, LLC*, No. 15-CV-5100, 2018 WL 3133454, at *16

(E.D.N.Y. Feb. 16, 2018) (quoting *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d

392, 400–01 (S.D.N.Y. 2012)), *report and recommendation adopted*, 2018 WL 1686103

(Mar. 31, 2018).  To determine whether Champion Cabinet is a "substantial continuity"

of Quality Woods, the Court looks to

> (1) whether the successor company had notice of the subject liability or
> pending lawsuit prior to acquiring its predecessor's business;
> (2) the ability of the predecessor to provide relief on the same;
> (3) whether there has been a substantial continuity of business operations;
> (4) whether the successor company uses the same location;
> (5) whether it uses the same or substantially the same work force;
> (6) whether it uses the same or substantially the same supervisory
> personnel;
> (7) whether the same jobs exist under substantially the same working
> conditions;
> (8) whether the successor company uses the same machinery, equipment,
> and methods of production; and
> (9) whether it produces the same product.

*Wen Jian Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d 216, 223 (E.D.N.Y. 2016) (line

breaks added).  No single factor is dispositive, but courts have recognized the first two

factors—whether the alleged successor had notice of the lawsuit prior to acquisition and

whether the predecessor is able to provide relief—are "critical."  *Marte v. Westbury Mini*

*Mart, Inc.*, No. 16-CV-53, 2017 WL 9485667, at *9 (E.D.N.Y. Jan. 18, 2017) (quoting

*Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014)),
*report and recommendation adopted*, 2017 WL 838194 (Mar. 3, 2017); *accord*
*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985) ("The first two factors
identified . . . are critical to the imposition of successor liability.  The successor doctrine
is derived from equitable principles, and it would be grossly unfair, except in the most
exceptional circumstances, to impose successor liability on an innocent purchaser when
the predecessor is fully capable of providing relief or when the successor did not have
the opportunity to protect itself by an indemnification clause in the acquisition
agreement or a lower purchase price.").

Troy rests his theory of substantial continuity on allegations that Quality Woods
changed its name to Champion Cabinet as of April 16, 2017 and moved to 40 East
Merrick Road, (June 2017 Lin Aff. ¶¶ 6–7; Inquest Tr. at 20:16–22:18; *see* OTSC Resp.
at 3–4); that Quality Woods and Champion Cabinet were both "owned and managed by
. . . Wei Gao"; and that they share a telephone number, (June 2017 Lin Aff. ¶¶ 8–9; *see*
OTSC Resp. at 4–5).  In addition, Troy makes various arguments that Champion
Cabinet employed two of the same people, "Mr. Cheng and Gao Lee"; that both
businesses "made cabinets and otherwise worked with wood, and would have employed
carpenters"; and that Quality Woods no longer exists or operates at 1340 Metropolitan
Avenue.  (OTSC Resp. at 4–5).

These allegations are insufficient, even on default, to establish substantial
continuity.  For one, they are contradicted by the Complaint, where Troy alleged
Champion Cabinet was Lin's employer, (Compl. ¶¶ 8, 50), and that it was located at
1340 Metropolitan Avenue, (*id.* ¶¶ 8, 21); and Lin's testimony at the inquest, where he

stated he had never heard of Champion Cabinet, (*e.g.*, Inquest Tr. at 13:05–:07, 16:25–17:02), and never worked for Champion Cabinet, (*id.* at 16:22–:24, 22:19–:21).

For another, even accepting Troy's new assertions as true, they do not establish substantial continuity between Quality Woods and Champion Cabinet.  Of the nine factors, Troy concedes the third, seventh, and eighth factors do not favor the imposition of successor liability on the current record.  (OTSC Resp. at 5 ("There is too little evidence on this record to say whether Champion Cabinet continued Quality Woods's business operations, whether the carpenter jobs at Champion Cabinet exist under the same working conditions as at Quality Woods, or whether Champion Cabinet used Quality Woods's equipment.")).  Nor does any other factor weigh in favor of successor liability, according to the Court's analysis, aside from the sixth—both businesses do appear to be owned by Wei Gao.

The first two factors—deemed "critical"—weigh against a finding of substantial continuity.  As to the first factor, Troy argues that because Lin made a report via 311 about Quality Woods not paying taxes in early June 2016, (*id.*; *accord* Inquest Tr. at 18:08–:19), Champion Cabinet was on notice of Lin's wage-and-hour claims.[11]  Lin's report about Quality Woods' unpaid taxes did not put Champion Cabinet on notice of the wage-and-hour claims he now seeks judgment on (especially considering Lin has abandoned his claims arising from Quality Woods' purported tax fraud).  This first factor, thus, weighs against successor liability.  As for the second factor, there are no

---

[11] Lin's 2017 affidavit also states that Wei Gao was aware Lin was considering legal action against him after Lin contracted an infection from working with "insect-infested wood" at Quality Woods, (June 2017 Lin Aff. ¶¶ 29–32, 37); this was similarly about different issues—workplace safety and disability discrimination—than wage-and-hour violations, and thus does not supply the requisite notice contemplated by the substantial continuity doctrine.

well-pleaded allegations that Quality Woods is unable to provide relief.  The fact that

Quality Woods has not responded to the Complaint is insufficient.  *Feng Chen v. Patel*,

No. 16-CV-1130, 2019 WL 2763836, at \*5 (S.D.N.Y. July 2, 2019) (finding mere fact of

defendants' default does not satisfy second factor of "substantial continuity" test);

*Moreno v. Ramos*, No. 17-CV-9439, 2021 WL 637563, at \*4 n.6 (S.D.N.Y. Feb. 17, 2021)

(same).  And Troy's submission indicates that Quality Woods *still* exists, (*e.g.*, OTSC

Resp. at 4),[12] which weighs against the imposition of successor liability on Champion

Cabinet, *Battino*, 861 F. Supp. 2d at 407–08 ("The Court also concludes that there are

genuine issues of fact as to the predecessor's ability to provide relief.  There is no dispute

that the principals of Cornelia Fifth . . . are in bankruptcy, [or] that Cornelia Fifth and

Zicu technically still exist.").

　　　As to the fourth factor, Troy avers that Champion Cabinet is located at 38 and 40

East Merrick Road although Lin testified only ever worked at 1340 Metropolitan

Avenue; these different locations do not suggest a substantial continuity, and indeed

suggest the opposite.[13]  Nor has Troy adequately demonstrated the ninth factor—that the

businesses produce the same goods—weighs in his favor.  In fact, Troy's offered evidence

indicates that Quality Woods and Champion Cabinet may actually be different types of

businesses; the public records Troy attached with the third default judgment motion

indicate that Champion Cabinet is a retail furniture store, (Champion Cabinet

---

　　　[12] "Quality Woods, Inc. had not been dissolved as of September 10, 2020[.]"
(OTSC Resp. at 4).

　　　[13] Furthermore, while Troy contends Quality Woods moved to 38 East Merrick
Road, (OTSC Resp. at 3), the public records he offers in support only tie Champion
Cabinet *Factory*, Inc.—a different company—to that address, (Champion Cabinet
Factory LexisNexis Records).  Nor had Lin heard of the address when questioned at the
inquest.  (Inquest Tr. at 25:19–26:01).

LexisNexis Records at 2 ("Industry: RETAIL" and "SIC: 5712(FURNITURE STORES)")),
while Lin describes working in a factory, not a storefront, (Inquest Tr. at 7:02–:12), and
making kitchen cabinets in particular, not furniture generally, (*see id.* at 8:11–:12; June
2017 Lin Aff. ¶¶ 14–15).

Based on this record, the Court cannot conclude Champion Cabinet has any
relationship to these proceedings, much less that it is a substantial continuity of Quality
Woods. Aside from potentially being owned by the same person—Wei Gao—Troy has
failed to make the requisite showing Champion Cabinet is a substantial continuity of
Quality Woods, even unrebutted and on default. Quality Woods still exists. The
companies operate in different counties, there is no evidence the companies use the
same equipment or impose the same working conditions, and there is no evidence they
offer substantially similar products. Troy has not demonstrated Quality Woods was on
notice of Lin's wage-and-hour complaints before transitioning to Champion Cabinet, or
that Quality Woods is unable to satisfy any judgment such that the imposition of
successor liability on Champion Cabinet would be appropriate. For these reasons, the
Court finds Lin has not sufficiently shown Champion Cabinet is a successor employer
under FLSA. *Mateo*, 2015 WL 5655689, at *7 (denying default judgment motion where
plaintiff's allegations that defendant was his "employer" was contradicted by inquest
testimony).

Troy does not address the requirements of the successor liability doctrine under
NYLL, as a result the Court concludes that Champion Cabinet is not a successor
employer under this statute either. *Higueral Produce, Inc. v. CKF Produce Corp.*, No.
18-CV-6760, 2019 WL 5694079, at *9 (E.D.N.Y. Aug. 16, 2019) ("What Higueral has
submitted and argued is inadequate. It is not the Court's job to determine which form of

successor liability would best fit the relationship between CKF and CKF II or to make arguments supporting this claim for Higueral, even in the context of default judgment."), *report and recommendation adopted in relevant part*, 2019 WL 5693798 (Sept. 30, 2019).  The Court, thus, recommends Champion Cabinet be dismissed from this case and suggests, given the long duration of the case and the complete absence of any proof about its involvement in the alleged violations, the dismissal be with prejudice.

II.    FLSA Coverage

This Court cautioned Troy in its first report and recommendation that the "significant substantive discrepancies in the Complaint" would leave the Court unable to "determine whether FLSA applies to [Defendants]."  *Quality Woods I*, 2019 WL 1450746, at *1 n.2.  Troy has taken no steps to rectify these discrepancies or supply any additional detail to the Court.  As detailed below, the Court cannot determine Quality Woods is an employer subject to FLSA and recommends Lin's FLSA claim be denied.

Employers are subject to FLSA when their employees are either "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").  29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see generally Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985).  "[T]o properly allege individual or enterprise coverage, [plaintiff] need not do much.  Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce."  *Sciacca v. Vectorworks Marine, LLC*, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D.

Fla. Feb. 1, 2013) (second and third alterations in original), *report and recommendation adopted*, 2013 WL 655402 (Feb. 22, 2013).

A.    Individual Coverage

As to individual coverage, Lin has not alleged that he *personally* was either engaged in commerce or in the production of goods for commerce.  *Owusu v. Corona Tire Shop, Inc.,* No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) ("[T]he employee bears the burden of establishing his individual coverage [under the FLSA].").  The Court concludes that, therefore, he has failed to demonstrate individual coverage under FLSA.

1.    "Engaged in Commerce"

"To determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the Act."  *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009) (per curiam).  "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof."  29 C.F.R. § 779.103.  "[T]his includes every employee employed in the channels of such commerce or in activities so closely related to this commerce, as to be considered a part of it as a practical matter."  *Id.*

The only details included about Lin's work are that he was a "carpenter" and that his "duties . . . included cutting wood and assembling pieces of wood furniture, including cabinets." (Compl. ¶¶ 8, 50–51; Dec. 2020 Lin Decl. ¶ 4; June 2017 Lin Aff. ¶ 13).  In other words, these allegations in the Complaint do not suggest that Lin was "engaged in

commerce, but merely describe[] h[is] work." *Alonso v. Tepa Mar Y Tierra Inc.*, No. 11-CV-1783, 2013 WL 12124018, at *2 (N.D. Tex. Feb. 5, 2013) (concluding that complaint failed to allege existence of FLSA coverage). His affidavits provide no further information about Quality Woods' business or his role. (*See* Dec. 2020 Lin Decl. ¶ 4 ("I worked for QUALITY WOODS, INC. d/b/a Quality Woods from on or about March 01, 2015 to May 28, 2016, as a carpenter."); June 2017 Lin Aff. ¶ 13 (same)). As a basic rule, "if [the plaintiff] did not have any contact with out-of-state customers or businesses [or things], he cannot be individually covered under the FLSA." *Yang Li v. Ya Yi Cheng*, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012) (adopting report and recommendation). Nowhere does Troy allege Lin had any customer contact or contact with out-of-state businesses or products. Without more, the Court cannot conclude these bare allegations establish that he was engaged in commerce. *See, e.g., Jones v. SCO Fam. of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) ("While Ethelberth might be able to establish individual coverage by showing that these supplies and equipment were shipped to or from overseas or out-of-state destinations during his work shifts, Ethelberth has offered no such evidence."); *Cruz Mejia v. Bros. Petroleum, LLC*, No. 12-CV-2842, 2015 WL 3619894, at *5 (E.D. La. June 9, 2015) ("[T]he Second Amended Complaint is devoid of any facts or allegations regarding the plaintiffs' relationship to instrumentalities or facilities of interstate commerce. Indeed, the only allegations in the Second Amended Complaint regarding plaintiffs' work duties are that plaintiffs worked as hourly cashiers, cooks, and store operators at defendants' convenience stores. While these allegations provide a generic description of plaintiffs' work, 'they do not show how the work engages plaintiffs in interstate commerce.'" (footnote omitted) (quoting *Lopez-*

*Santiago v. Coconut Thai Grill*, 13-CV-4268, 2014 WL 840052, at *4 (N.D. Tex. Mar. 4, 2014))).

2.   <u>"Production of Goods in Commerce"</u>

There are also no allegations—even in a conclusory fashion—that Lin produced goods in commerce.

> "Produced" means produced, manufactured, mined, handled, or in any other manner worked on in any State; . . . an employee shall be deemed to have engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State.

29 U.S.C. § 203(j).  "[E]mployees in retail stores who sell, pack, or otherwise work on goods which are to be shipped or delivered outside of the State are engaged in the production of goods for commerce."  29 C.F.R. § 779.104.

Neither the Complaint nor supporting declarations allege that Lin was involved in the production of goods in commerce at all.  They state he made wood furniture, such as cabinets, but do not describe where the cabinets were sold, whether they were shipped out of state, or even the source of the wood.  As a result, the Court cannot conclude Lin was involved in the production of goods for interstate commerce.  *Day An Zhang v. L.G. Apparel, Inc.*, No. 09-CV-3240, 2011 WL 900183, at *3 (E.D.N.Y. Feb. 18, 2011) ("[P]laintiff alleges she was a factory worker for Defendant's apparel manufacturing business and that Plaintiff is a covered individual within the meaning of the FLSA.  These conclusory allegations, without any factual details addressing defendants' interstate activities, fail to establish that plaintiff was personally engaged in the production of goods for commerce." (citation and quotations omitted)), *report and recommendation adopted*, 2011 WL 900950 (Mar. 15, 2011).

B.     Enterprise Coverage

Enterprise coverage exists where an employer has (1) "employees engaged in commerce or in the production of goods for commerce"; and (2) an "annual gross volume of sales made or business done" equal to or greater than $500,000.  29 U.S.C. § 203(s)(1)(A).

The Complaint attempts to establish enterprise coverage by alleging that Quality Woods operates "a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year" and it "purchased and handled goods moved in interstate commerce."  (Compl. ¶¶ 10–11, 13–14, 16–17, 19–20, 22–24).  But these are nothing more than conclusory allegations.

The allegations about enterprise coverage parrot the statute and are conclusory. There are no allegations about Quality Woods that tie its business to interstate commerce—either by describing what the employees do and tying that to interstate activity, or by describing what the employees produce and tying that to interstate activity.  And where a plaintiff merely repeats the statutory language under FLSA and fails to provide sufficient facts for the Court to infer that a defendant is an enterprise "engaged in interstate commerce," the complaint does not meet the necessary pleading threshold to obtain a default judgment.  *See, e.g.*, *Kaplan v. Wings of Hope Residence, Inc.*, No. 18-CV-2972, 2018 WL 6437069, at *7 (E.D.N.Y. Dec. 7, 2018) ("The Plaintiff's general allegations are devoid of the factual details required for the Court to review whether any employees were engaged in interstate commerce.  While the complaint includes the Plaintiff's general job responsibilities, such as purchasing supplies for the Residence, collecting mail or overseeing repairs, nothing indicates that any of these responsibilities had an interstate component.  Many of the supplies purchased by house

managers may have been made outside of New York or transported across state lines. An allegation that asserts that a defendant's employees purchased or handled out-of-state cleaning supplies would have fulfilled this requirement.  However, without even a bare assertion that any of the employees' tasks involved interstate commerce, the Plaintiff's allegations are insufficient." (citation omitted)); *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2018 WL 3742696, at *5–6 (E.D.N.Y. May 18, 2018) (collecting cases)*, report and recommendation adopted*, Order (Sept. 12, 2018); *see also Lamaka v. Russian Desserts Inc.*, No. 18-CV-7354, 2020 WL 42810, at *2 (E.D.N.Y. Jan. 3, 2020) ("Although plaintiff appears to be a baker, he is frequently referred to as an electrician, or as being involved in the 'electrical industry.' Notably, Russian Desserts is defined as 'a domestic corporation operating in the electrical industry in the City and State of New York,' leaving plaintiff's work entirely ambiguous.  From these factually sparse and contradictory allegations, the Court cannot conclude that enterprise or individual coverage are adequately pleaded." (citations omitted)); *Siemieniewicz v. CAZ Contracing Corp.*, No. 11-CV-704, 2012 WL 5183375, at *7 (E.D.N.Y. Sept. 21, 2012) (finding plaintiffs had insufficiently pled enterprise liability in FLSA action under *Iqbal*'s standard where they merely repeated the statutory language that employer was "engaged in interstate commerce and/or production of goods for commerce"), *report and recommendation adopted in relevant part*, 2012 WL 5183000 (Oct. 18, 2012); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85–86 (E.D.N.Y. 2012) ("[I]nferring an interstate commerce nexus from nothing more than the general description of an employer's business—however likely the conclusion may seem—is in tension with both the presumption against default and the purpose of Federal Rule of Civil Procedure 55."); *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-

1021, 2012 WL 909830, at *1–2 (E.D.N.Y. Feb. 28, 2012) (recommending the denial of a

default judgment motion where the complaint contained "only conclusory statements

about interstate commerce"), *report and recommendation adopted*, 2012 WL 909825

(Mar. 16, 2012); *Briggs v. Russell Elec. Constructors, LLC*, No. 18-CV-140, 2018 WL

6839057, at *2 (N.D. Fla. Oct. 5, 2018) ("Plaintiff attempts to assert . . . enterprise

coverage by alleging that Defendant 'had annual gross sales in excess of $500,000.00

and two or more employees who regularly handled goods that moved in or were

produced for interstate commerce,' and that Defendant 'was an enterprise engaged in

commerce as defined.' Plaintiff also alleges that Plaintiff worked for Defendant as an

electrician from 2004 to 2017, during which 'Defendant's employees, including Plaintiff,

handled and used materials, which have moved in interstate commerce.' These are the

only allegations relating to whether Plaintiff is covered by the FLSA. This Court finds

that Plaintiff has not alleged facts that are sufficient to plead either individual or

enterprise coverage under the FLSA. The problem with the Complaint is that it did not

provide sufficient factual allegations about Defendant's business or the nature of

Plaintiff's work. Paragraphs 6 and 7 of the Complaint are just plain recitals of the

statute." (citations omitted)); *Morrow v. J W Elec., Inc.*, No. 11-CV-1988, 2011 WL

5599051, at *3 (N.D. Tex. Nov. 16, 2011) (holding plaintiff who performed electrical

work failed to allege enterprise coverage where "he cite[d] cases that establish that the

mere handling of goods or materials that have traveled in interstate commerce creates

enterprise coverage" but did not allege such facts himself and only made conclusory

allegations repeating the statutory language).

"[R]equir[ing] a plaintiff seeking [FLSA]'s protection to explain in his pleading

just what it is about his employer's business that brings it within the law's ambit" is

"more consistent with applicable case law concerning pleading requirements" and "does not frustrate the FLSA's remedial purpose." *Siemieniewicz*, 2012 WL 5183375, at *8. One can imagine how straightforward it would be to state some fact about the source of the materials of the cabinets made by Quality Woods or their final destination.  But the Court's duty is to decide motions based on facts pled, not imagination.  The Court will not infer an interstate connection where none is alleged.

For the foregoing reasons, having not properly pled either individual or enterprise coverage, the motion for default judgment should be denied with respect to the FLSA claim, and this claim dismissed.

III.   <u>Overtime</u>

Even if Troy had established Quality Woods was an employer covered by FLSA, the Court finds he has failed to state a claim for overtime under FLSA or NYLL.  To state overtime claims under these statutes, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (FLSA); *accord* 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of [FLSA].").  In *Lundy*, the Second Circuit articulated "the degree of specificity needed to state an overtime claim under FLSA."  711 F.3d at 114.  It concluded that a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Id.*  Or put differently, a plaintiff must allege that in at least one workweek he or she worked at least 40 hours, and also worked some uncompensated time in that week in excess of the 40 hours.  *See id.*  An overtime claim fails to satisfy

this requirement if it generally alleges that the plaintiff was not paid for overtime hours worked. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). The "requirement that plaintiffs must allege overtime without compensation in a 'given' workweek was not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting *Lundy*, 711 F.3d at 114). Nor is it acceptable for a plaintiff to just "track[ ] the statutory language of the FLSA . . . but alleg[e] no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89.

In the absence of well-pled allegations of Lin's work schedule, the Court finds he has failed to state a claim for unpaid overtime under either FLSA or NYLL.

In the Complaint, Lin alleged he worked from 9 AM to 9 PM, with a 30-minute break from 6 to 6:30 PM, Monday through Saturday. (Compl. ¶ 53). He asserts that, on approximately two occasions, he worked from 9 AM to 9 PM, with a 30-minute break from 6 to 6:30 PM, on Sunday. (*Id.* ¶ 54). These allegations were inconsistent by the evidence that followed. In the declarations submitted in connection with his first, second, and third motions for default judgment, as well as at the damages inquest, Lin contended he actually worked only from 9 AM to 6 PM, Monday through Saturday. (June 2018 Lin Decl. ¶ 5; Dec. 2020 Lin Decl. ¶ 5; Inquest Tr. at 14:08–:15). Only on three or four times during his employment did he work from 6:30 PM to 9 PM. (June 2018 Lin Decl. ¶ 6; Dec. 2020 Lin Decl. ¶ 6; Inquest Tr. at 14:16–:22). And instead of two Sundays from 9 AM to 9 PM, Lin asserted that he worked on three or four Sundays from 9 AM to 6 PM. (June 2018 Lin Decl. ¶ 7; Dec. 2020 Lin Decl. ¶ 7; Inquest Tr. at 14:23–15:03). And in response to the Court's direction to explain the inconsistencies in his pleadings and arguments, counsel stated that Lin actually only "worked two Sundays

during his employment," (OTSC Resp. at 5), and four times a year he worked from 9 AM to 6:30 PM, 7 PM, or 9 PM, (*id*.).  In other words, Lin seeks damages based on three contradictory work schedules for the same time period.

Furthermore, Lin does not identify a specific week in which he worked overtime. His allegations amount to a generalized set of claims that the Second Circuit found deficient in *Lundy*.  *E.g.*, *Becerra v. Well Maid Cleaning Enters., Inc.*, No. 14-CV-3147, 2015 WL 5009274, at *7–8 (E.D.N.Y. Aug. 21, 2015) ("Plaintiff's allegations here, which state only that Plaintiff 'regularly' and 'approximately' worked 84 four hours, seven days a week for fifty-two weeks, . . . do not rise to the level of those reasonably specific enough to support a damages award."); *Fridman v. GCS Computs. LLC*, No. 17-CV-6698, 2018 WL 1581990, at *4 (S.D.N.Y. Mar. 27, 2018) ("[T]he only allegations relating to overtime in the complaint are when Plaintiff alleges that he 'routinely' worked a total of ten or more hours over forty hours per week.  Yet at no point in the complaint does Plaintiff allege a single particular week he worked more than forty hours or attempt to estimate the number of overtime hours he worked in any of the weeks employed." (citations omitted)); *Johnson v. Equinox Holdings, Inc.*, No. 13-CV-6313, 2014 WL 3058438, at *4 (S.D.N.Y. July 2, 2014) ("In support of his overtime claim, Goldstein relies solely upon the Complaint's allegation that between 2006 and 2011 he 'typically worked between twenty one and fifty hours per week, with an additional three to four hours off the clock.'  Such generalized and imprecise allegations are insufficient to support a 'reasonable inference' that Goldstein, in fact, worked more than forty hours in a given week." (citation and quotations omitted)).

But even if the allegations satisfied *Lundy*, the inconsistencies among the proffered schedules makes it impossible to conclude there was an overtime violation.  In

other words, there are no well-pleaded allegations from which the Court can determine
Lin worked the requisite number of hours in a given week such that Quality Woods is
liable for unpaid overtime.  *See, e.g.*, *Lopez v. Cajmant, LLC*, No. 15-CV-593, 2020 WL
9814059, at *5–6 & n.8 (E.D.N.Y. Oct. 26, 2020) (recommending denial of overtime
claim and noting that, "[g]iven the internal inconsistencies not only with the Second
Amended Complaint but also with each other, the affidavits cannot be credited for
Plaintiff's days and hours worked"), *report and recommendation adopted*, Order (Nov.
30, 2020); *Jian Zhong Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086, 2016 WL
2909966, at *7 (E.D.N.Y. Mar. 18, 2016) (finding no spread-of-hours liability where the
complaint was "internally inconsistent as to the hours plaintiffs worked each day"),
*report and recommendation adopted*, 2016 WL 2758272 (May 12, 2016).

As a result, the Court respectfully recommends Lin's FLSA and NYLL overtime
claims be dismissed.  The Court also notes that, even if it found Quality Woods liable for
overtime violations, it would be unable to ascertain damages.  "[A] party's default . . . is
not considered an admission of damages."  *Greyhound Exhibitgroup,* 973 F.2d at 158.
And if "a plaintiff fails to demonstrate its damages to a reasonable certainty, the court
should decline to award any damages even though liability has been established through
default."  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting
report and recommendation) (collecting cases).  In evaluating damages, courts may
consider the credibility of evidence offered by the parties, *Man Wei Shiu v. New Peking
Taste Inc.*, No. 11-CV-1175, 2014 WL 652355, at *11–12 (E.D.N.Y. Feb. 19, 2014)
(adopting report and recommendation) (following inquest, and "[h]aving weighed the
testimony of the three witnesses, . . . determin[ing] that plaintiffs have presented the
more credible evidence"); *Coulibaly v. Millennium Super Car Wash Inc.*, No. 12-CV-

4760, 2013 WL 6021668, at *8–9 (E.D.N.Y. Nov. 13, 2013) (adopting report and recommendation) (rejecting proffered damages calculations in light of plaintiff's "unpersuasive" and "contradictory statements" at the inquest), and may decline to award damages altogether, *Ye Hong v. 7 Express Rest. Corp.*, No. 17-CV-2174, 2019 WL 2261091, at *5 (E.D.N.Y. Mar. 14, 2019) (finding evidence "too speculative to support any reasonable award of damages"), *adopted in relevant part*, 2019 WL 1429584 (Mar. 29, 2019).

Troy has not established Lin's damages with anything close to certainty. As outlined above, Troy's submissions regarding Lin's work schedule are confusing and contradictory. Nor did the Court find Lin credible at the inquest. Lin contradicted himself multiple times. (*See, e.g.*, Inquest Tr. at 21:06–:11, 24:23–26:05). He appeared unfamiliar with many of the allegations put forth by Troy. (*See, e.g.*, *id.* at 9:06–:22, 25:19–:22). As for his demeanor, Lin was evasive when confronted with inconsistencies in his sworn statements, and his attempts to explain them appeared incredible. (*See, e.g.*, *id.* at 15:14–16:16, 21:06–:11). Faced with an incoherent and questionable record, even if the Court were to impose liability, it would decline to award damages in the absence of credible submissions by Troy or testimony by Lin.

IV.   Supplemental Jurisdiction

In light of the dismissal of Champion Cabinet and denial of the motion with respect to Lin's overtime claims, all that remain are Lin's claims under the NYLL for Quality Woods' failure to provide him wage notices and wage statements. The Court recommends supplemental jurisdiction over these claims be denied and they be dismissed without prejudice.

A court "may decline to exercise supplemental jurisdiction over" state-law claims between nondiverse parties[14] after it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The decision to decline supplemental jurisdiction is addressed to the discretion of the district court.  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).  Any decision must be guided by the values set out in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), that is, economy, convenience, fairness, and comity.  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (second alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

This is a "usual case," and the balance of factors weighs in favor of declining supplemental jurisdiction.  For one, it is more economical to do so.  "[W]hen evaluating judicial economy," the Court looks to its "familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation."  *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013).  While this case was filed over four years ago, the ensuing years of litigation have complicated rather than clarified this Court's understanding of the facts.

---

[14] There are no well-pleaded allegations as to Lin's or Wei Gao's citizenships for the purposes of diversity.  But even assuming there was diversity among the parties (the record suggests Lin is a citizen of New Jersey, (Dec. 2020 Lin Decl. ¶ 1), while Quality Woods and Wei Gao appear to be citizens of New York, (Compl. ¶ 9; Inquest Tr. at 13:08–:10)), the statutory damages cap on Lin's remaining claims is $10,000; as a result, the Court lacks original jurisdiction over them, 28 U.S.C. § 1332(a) (limiting district court diversity jurisdiction to "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs").

No discovery has been taken, and the Court has decided no motions on the merits.  This factor weighs heavily in favor of declining jurisdiction.  *Id.* at 393; *see, e.g.*, *Kolari*, 455 F.3d at 123 n.6 ("Although the consolidation of actions here necessitated a degree of management greater than might ordinarily be required, the judicial resources expended do not approach those that we have previously held justify pendent or supplemental jurisdiction after dismissal of all original-jurisdiction claims."); *Mohan v. City of New York*, No. 17-CV-3820, 2018 WL 3711821, at *16 (S.D.N.Y. Aug. 3, 2018) ("[J]udicial economy favors dismissal given that, despite the lengthy procedural history of the case, the matter still has not progressed past the pleading stage.").

For another, it would not be inconvenient or unfair for Lin to pursue these wage notice and statement claims in state court.  *Chenensky*, 942 F. Supp. 2d at 393; *see, e.g.*, *Kneitel v. Silvery*, No. 15-CV-6811, 2018 WL 526486, at *6 (E.D.N.Y. Jan. 22, 2018) ("[D]eclining to exercise supplemental jurisdiction would not inconvenience the parties or unfairly disadvantage any of them: The litigation remains in its early stages, with no discovery yet conducted, and all of the parties either reside or are employed in New York.  It would therefore not be difficult to refile and defend the case in state court." (citation omitted)).  In addition, Troy is almost entirely to blame for the delays in this case—for example, he took no action from April 2019 to May 2020—a fact which weighs against the exercise of supplemental jurisdiction.  *Chenensky*, 942 F. Supp. 2d at 394 (finding "fairness does not counsel retaining jurisdiction" where the parties bore responsibility for needlessly delaying the case).  Nor would Lin's claims be barred by the statute of limitations, despite the passage of time since the commencement of this case. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (finding supplemental jurisdiction should be declined over plaintiff's remaining state-law claims

and noting "dismissal will not have any impact on the statute of limitations for these claims, because, pursuant to 28 U.S.C. § 1367(d), the limitations period is tolled while the claims are pending and for 30 days after they are dismissed").

And while the remaining issues of state law are straightforward, comity favors in favor of them being decided in state court. *See, e.g.*, *Kaplan*, 2020 WL 616630, at *12 (declining supplemental jurisdiction over NYLL claims following dismissal of FLSA claims and noting "[n]eedless of decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" (alteration in original) (quoting *Gibbs*, 383 U.S. at 726)); *see also Dixon v. Int'l Unified Workforce, Inc.*, No. 18-CV-7191, 2020 WL 6140054, at *4 (E.D.N.Y. Sept. 1, 2020) ("Because of Dixon's failure to establish IUWF's liability under FLSA, this Court recommends that supplemental jurisdiction should be declined over the NYLL claims."), *report and recommendation adopted*, Order (Oct. 19, 2020).  As a result, the Court respectfully recommends these remaining NYLL claims be dismissed without prejudice.

## CONCLUSION

For the reasons stated, the Court respectfully recommends the motion for default judgment is denied its entirety and the Complaint be dismissed without prejudice, except that the claims against Champion Cabinet be dismissed with prejudice.  The Court further recommends the motion for attorney's fees be denied as moot.  The Clerk of Court should be directed to close the case.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by

the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Lin is directed to serve a copy of this Report and Recommendation on Quality Woods, Champion Cabinet, and Wei Gao and file proof of service on the record.  Troy is also directed to provide a certified translation of this Report and Recommendation to Lin and file proof of service on the record by **August 17, 2021**, along with a copy of the translated Report and Recommendation.

SO ORDERED.

*/s/ Sanket J. Bulsara* August 10, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York